# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDUCATIONAL CREDIT | : | |
| MANAGEMENT CORPORATION, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | Civil No. 3:05CV96(MRK) |
| | : | |
| CLAUDIA CURISTON, | : | |
| | : | |
| Appellee. | : | |

## RULING ON APPEAL FROM BANKRUPTCY COURT

This is an appeal [doc. # 1] from a decision of the United States Bankruptcy Court, District of Connecticut (Krechevsky, B.J.) discharging the student loans of Debtor Claudia Curiston pursuant to a reopened Chapter 7 bankruptcy case.[1] *See Curiston v. Conn. Student Loan Found. (In re Curiston)*, No. 03-2097, 2004 Bankr. LEXIS 2322 (Bankr. D. Conn. Dec. 22, 2004). The Bankruptcy Court discharged her student debt because the court concluded that requiring Ms. Curiston to repay her student loans would impose an "undue hardship" on her within the meaning of 11 U.S.C. § 523(a)(8) and the Second Circuit's controlling decision in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987). On appeal, Educational Credit Management Corporation ("ECMC") argues that the Bankruptcy Court erred in its "undue hardship" determination. Specifically, ECMC asserts that Ms. Curiston failed to carry her burden of proof on the second and third prongs of *Brunner*'s tripartite test; that is, she failed to prove (1) that "additional

---

[1]  Ms. Curiston filed a Chapter 7 bankruptcy petition with her now-deceased husband on January 1, 2001, but did not seek to discharge the loans at issue here in that original proceeding. Her husband died in April 2001. In 2004, Ms. Curiston petitioned to reopen her bankruptcy case in order to seek a discharge from her student loan indebtedness.

circumstances" indicate that, for a substantial period of the repayment period of the student loans, she would be unable to maintain a minimal standard of living if she were required to repay the loans and (2) that she had made a "good faith" effort to repay her loans to ECMC. *See Brunner*, 831 F.2d at 396. Having considered the briefs and oral arguments of the parties, the Court AFFIRMS.

## I.

The facts are set forth in greater detail in the Bankruptcy Court's opinion, familiarity with which is assumed. ECMC does not contest the Bankruptcy Court's findings of fact,[2] and this Court therefore adopts the Bankruptcy Court's factual determinations as its own. Only those background facts that are especially salient are recounted here.

In 2004, Ms. Curiston was a 58 year-old widow, who had been diagnosed with and long suffered from Post-Traumatic Stress Disorder. Since 1989, Ms. Curiston had "suffered from physical symptoms of unknown etiology which impair her ability to walk and her balance." *Curiston*, 2004 Bankr. LEXIS 2322, at *4. The Bankruptcy Court found that Ms. Curiston "exhibits symptoms of severe anxiety exacerbated by stress," *id.* at *4, is easily fatigued, is unable to work full-time, and is unlikely to be able to work full-time for the foreseeable future. *Id.* at *11-*12. The

---

[2] ECMC devoted a substantial portion of its Appellate Brief [doc. # 7] to a factual recitation that appears to challenge the Bankruptcy Court's factual determinations, *see id.* at 5-13, *passim*. One such example is ECMC's contention that "[t]he record indicates that the physical or medical conditions alleged by Curiston have never been diagnosed, and are, at best, highly speculative." *See id.* at 14. The Bankruptcy Court, however, specifically found that "[t]he debtor has provided ample evidence that she suffers from *both* psychological and physiological conditions that prevent her from working full-time." *Curiston*, 2004 Bankr. Lexis 2322, at *13 (emphasis added). ECMC represented both in its Appellate Brief [doc. # 7] at 3, and in its Reply Brief that it "has not challenged the Bankruptcy Court's findings of fact . . . ." Appellant's Reply Brief [doc. # 14] at 1. In view of ECMC's representations, which were repeated at oral argument, the Court ignores the portion of any argument by ECMC that contests the Bankruptcy Court's factual findings or is based upon any other, contrary factual finding.

Social Security Administration found that Ms. Curiston "became disabled on March 15, 1992" and that she was thereby entitled to disability benefits. *See id.* at *5. She collected these benefits through 2002, *see id.* at *6-*7, when "she relinquished [them] as a result of voluntarily entering the work force," *id.* at *14.

Despite her disability and with substantial physical assistance from her late husband, Ms. Curiston gained a Bachelors Degree and in 1999 a Masters Degree in Social Work. This appeal focuses on the student loans she acquired in obtaining those degrees. After she obtained her degrees and graduated in 1999, Ms. Curiston actively sought employment as a part-time social worker, but without success. In 2002, after many unsuccessful interviews, Ms. Curiston accepted a part-time position with Asian Family Services ("AFS"). Due to budget cuts, Ms. Curiston was laid off by AFS in October 2003. However, at the time of her reopened bankruptcy case, Ms. Curiston was working three days a week as an independent contractor for AFS, where she earned $19 per client hour, or about an average of $1,000 per month in gross pay. *See id.* at *7. Ms. Curiston had applied in the past for a higher-paying job with the Connecticut Department of Children and Families ("DCF"), but had been told that her physical disability may inhibit her ability to do the work. And Ms. Curiston's psychiatrist expressed misgivings about Ms. Curiston's ability to handle the trauma she would encounter daily if she worked at DCF. *See id.* at *10-*11.

The Bankruptcy Court found that Ms. Curiston's health had improved somewhat, leaving her able to do part-time work, rather than rely solely on social security benefits. *Id.* at *12. Nevertheless, the court found that even if AFS should regain funding and be able to re-employ Ms. Curiston in a part-time position, her earnings would not likely provide for more than her basic needs in "a best case scenario." *Id.* Thus, the Bankruptcy Court found as a fact that Ms. Curiston's

monthly expenses exceeded her income by over $2,000 per month, with no provision for contingencies or retirement.[3] *Id.* at *8.  Moreover, as a result of her inability to work a full-time job, her age, and her lack of retirement savings, the court also found that Ms. Curiston's income would likely decrease in the future.  Indeed, the court found that even if Ms. Curiston made all the budget adjustments ECMC recommended, she would still experience a monthly shortfall between income and expenses of over $900.  *See id.* at *10.

## II.

Whether a debtor can discharge her student loans in connection with a Chapter 7 petition is governed by 11 U.S.C. § 523(a)(8).  That section provides, in relevant part, as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
> . . . .
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a government unit, . . . unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor . . . .

11 U.S.C. § 523(a)(8).  In deciding whether a debtor meets the statutory standard of "undue hardship," the Court must follow the Second Circuit's decision in *Brunner*, in which the Second Circuit declared that a debtor may show that "undue hardship" would result from a court's decision not to except student loans from discharge if the debtor can prove by a preponderance of the evidence the following three requirements:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the

---

[3]  At the time of the Bankruptcy Court's decision, Ms. Curiston lived with her elderly mother in a rental apartment.  Her mother contributed $450 to their monthly expenses.  However, Ms. Curiston's mother was awaiting placement at a nursing home and her contributions to Ms. Curiston's monthly expenses would end once that placement occurred.  *See Curiston*, 2004 Bankr. LEXIS 2322, at *7.

loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.  "The *Brunner* inquiry is fact intensive . . . ."  *Reed v. SLM Corp. (In re Reed)*, No. 04-10570, 04-1025, 2005 WL 1398479, at *2 n.2 (Bankr. D. Vt. June 13, 2005).

ECMC does not contest the Bankruptcy Court's factual findings or that Ms. Curiston has met the first prong of the *Brunner* test.  Therefore, the question presented by this appeal is whether the facts as found by the Bankruptcy Court satisfy the second and third prongs of the *Brunner* standard.  *See Grogan v. Garner*, 498 U.S. 279, 291 (1991).  Some district courts have applied a clear error standard of review to a bankruptcy court's application of the *Brunner* test to a given set of facts.  S*ee Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*, 315 B.R. 554, 562-63 (9th Cir. BAP 2004); *Wetzel v. N.Y. State Higher Educ. Servs. Corp.*, 213 B.R. 220, 225 (Bankr. N.D.N.Y. 1996).  However, the majority of courts treat such a challenge as raising a question of law.   *See, e.g.*, *Brunner*, 831 F.2d at 396; *U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003); *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003); *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir. 2001).  Unlike its review of factual conclusions, a district court evaluates a bankruptcy court's legal conclusions under a *de novo*, not clear error, standard of review.  *See, e.g.*, *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000); *Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 138 (2d Cir. 1998).  This Court agrees with the majority view and will review *de novo* the Bankruptcy Court's application of the second and third elements of the *Brunner* test to the facts as that court found them.

**A.**

ECMC argues that in applying the second prong of the *Brunner* test, the Bankruptcy Court should not have considered Ms. Curiston's documented Post-Traumatic Stress Disorder ("PTSD") condition.  According to ECMC, because Ms. Curiston suffered from PTSD before she bound herself to the student loan agreement, as a matter of law, she cannot now argue that her physical and mental health condition is an "additional circumstance" that has prevented her and will continue to prevent her from maintaining a minimal standard of living for a substantial portion of the repayment period, as required by *Brunner*.

    **1.**      Before reaching the merits of that question, the Court must address the threshold issue of whether ECMC may assert this argument on appeal.  For ECMC did not specifically argue before the Bankruptcy Court that the court could not as a matter of law consider Ms. Curiston's preexisting psychological and physical problems in its "additional circumstances" analysis.  As a result, at oral argument on the present appeal, this Court *sua sponte* asked the parties whether ECMC was precluded from raising this issue on appeal.  In post-argument briefing, ECMC contends that this Court can address its argument because: (1) the very nature of the *Brunner* test preserved its argument for appeal; (2) *de novo* review permits the assertion of new legal arguments on appeal; (3) its general challenge to Ms. Curiston's psychological problems sufficiently preserved the present argument for appeal; and (4) in any event, the Court can and should exercise its discretion to entertain ECMC's present argument on appeal.  *See* Supplemental Brief of Appellant Educational Credit Management Corporation [doc. # 19].  Ms. Curiston responds that ECMC did not raise this issue in it pleadings below and that ECMC has therefore waived this argument.  She further argues that the exceptions to waiver are narrow and the facts of this case do not fit within any of those

6

limited exceptions.  *See* Appellee's Supplemental Memorandum of Law [doc. # 17].

The Second Circuit has held that an appellate court may hear an argument not raised before the trial court in order "to avoid a manifest injustice *or where the argument presents a question of law and there is no need for additional fact-finding.*"  *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004) (emphasis added); *see also Greene v. United States*, 13 F.3d 577, 585-86 (2d Cir. 1994).  The Court sees no manifest injustice in denying ECMC the opportunity to raise for the first time on appeal an issue that it clearly could have discovered and could easily have raised before the Bankruptcy Court.  *See Sniado*, 378 F.3d at 213 (stating that the availability of an argument below weighs against exercising discretion to hear the belated argument on appeal, but exercising discretion because the argument proposed was "purely legal and requires no further development of the record").  Contrary to ECMC's assertion, its general challenge to whether Ms. Curiston's physical and psychological problems were severe and concrete enough to satisfy the elements of the *Brunner* standard would not have alerted the Bankruptcy Court to ECMC's current argument that the Bankruptcy Court could not consider Ms. Curiston's PTSD condition *at all* in assessing her proof under the second *Brunner* prong.

Therefore, the fact that the Bankruptcy Court does not discuss this issue is not that court's fault; rather, it is ECMC's.  However, ECMC's argument on appeal – that a bankruptcy court cannot as a matter of law consider a preexisting condition in its additional circumstances analysis – "presents a question of law and there is no need for additional fact-finding."  *Id.*  Accordingly, the Court will exercise its discretion to address ECMC's preexisting condition argument even though it was not raised in the Bankruptcy Court.

      **2.**     The Second Circuit has not yet had occasion to consider whether a court can as a

matter of law consider a preexisting condition in assessing the second prong of its *Brunner* test. However, this Court sees no reason in *Brunner*, the statute, or logic to categorically prevent a court from considering a preexisting condition when assessing the additional circumstances prong.

As articulated in *Brunner*, the second element of its test requires the debtor to establish that "additional circumstances exist indicating that this state of affairs [namely, the debtor's inability to maintain a minimal standard of living] is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. *Brunner* itself imposed no limitations on the "additional circumstances" it had in mind or the evidence a court could consider in making that assessment. And from the language of the standard itself, it appears that the Second Circuit contemplated that courts would examine all of the circumstances then existing – including the debtor's mental and physical health condition, preexisting or not, as well as her age – in determining whether the debtor's ability to repay her debt would persist over time. *See Brunner*, 831 F.2d at 396 ("She is not disabled, nor elderly . . . ."); *cf. Nys v. Educ. Credit Mgt Corp.*, 308 B.R. 436, 448 (9th Cir. BAP 2004) (adducing a non-exhaustive list of possible factors to consider in the "additional circumstances" analysis).

Furthermore, it is difficult to see how a court could properly determine a debtor's ability to pay off her loans if the court was required to ignore the debtor's health and mental condition. Of course, the fact that a health condition may have existed in the past and even at the time a loan was incurred may well inform the court's analysis, but the mere fact that the condition was preexisting should not bar the court from considering it. Perhaps when the debtor incurred the loans, she was overly (or even unrealistically) optimistic about her chances to repay them and also maintain a minimal standard of living. If such an individual proves on the basis of all of the facts that she is

8

now unable and will continue to be unable to maintain a minimal standard of living for herself if required to repay her student loans, there is nothing in *Brunner* or the statute itself to prevent a finding of "undue hardship" merely because the debtor suffers from a physical or mental condition that existed at the time she incurred the loans. [4]

To be sure, the additional circumstances element sets a high standard of proof.  The district court in *Brunner* stated that "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment. . . .  In addition . . . this test has been formulated as the necessity of showing of unique or exceptional circumstances."  46 B.R. 752, 755 (S.D.N.Y. 1985) (internal quotation marks and citations omitted); *see Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005) ("The second factor is . . . a demanding requirement, and necessitates that a certainty of hopelessness exists that the debtor will not be able to repay the student loans . . . .") (internal quotation and citation omitted); *Brightful*, 267 F.3d at 328 (stating that the debtor "must prove a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control") (alterations in original and internal quotations omitted).[5]  Moreover, there is "clear congressional intent exhibited in section 523(a)(8) to make the

---

[4] In fact, the Bankruptcy Code elsewhere protects debtors from some of the ramifications of optimistic pre-petition decisions they make.  *See, e.g.*, 11 U.S.C. § 541 (making unlawful and unenforceable so-called "*ipso facto*" or bankruptcy clauses).

[5] The Ninth Circuit Bankruptcy Appellate Panel appears to have softened *Brunner*'s additional circumstances requirement somewhat by stating that "[s]uch circumstances need not be 'exceptional,' except in the sense that they are tenacious and demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay for a significant portion of the repayment period." *Nys*, 308 B.R. at 446.  This Court, however, is bound by the Second Circuit's pronouncement in *Brunner*, which described the necessary showing of additional circumstances as "exceptional" and "strongly suggestive of continuing inability to repay over an extended period of time . . . ." *Brunner*, 831 F.2d at 396.

discharge of student loans more difficult than that of other nonexcepted debt." *Brunner*, 831 F.2d at 396. But Congress could easily have stated that, in determining the existence of "undue hardship," a court must ignore any conditions a debtor might have had at the time she took out the loan she later seeks to discharge. Congress did not do so. Therefore, any assessment of hopelessness and undue hardship under § 523(a)(8) requires consideration of all facts and circumstances, including whether the debtor suffers from a preexisting condition that now renders her incapable of maintaining for a substantial portion of the repayment period a minimal standard of living if forced to repay her student loans.

Case law does not suggest the contrary. Indeed, in rejecting a claim similar to ECMC's, the United States Bankruptcy Appellate Panel for the Ninth Circuit recently reviewed a number of circuit court decisions and concluded that "no circuit court has held that a . . . condition in existence at the time the debtor obtained the educational loan in question must be excluded from consideration in the persistence analysis, or that the debtor must show a worsening or exacerbation to carry his burden on the second *Brunner* prong." *Mason*, 315 B.R. at 561. Moreover, many courts have explicitly and implicitly considered preexisting conditions in granting discharges of student loans. *See, e.g.*, *Porrazzo v. Educ. Credit Mgmt. Corp. (In re Porrazzo)*, 307 B.R. 345, 350 (Bankr. D. Conn. 2004) (discharging the educational debts of a debtor with "Asperger's Syndrome, a form of autism . . . . [and] a permanent disability"); *Mason*, 315 B.R. at 562 (holding that bankruptcy court's opinion that debtor with preexisting learning disability satisfied *Brunner*'s second prong was not clear error, after stating that "accepting ECMC's argument about pre-existing conditions would seem to contradict public policy"); *Kelsey v. Great Lakes Higher Educ. Corp.*, 287 B.R. 132 (Bankr. D. Vt. 2001) (considering debtor's preexisting emotional and psychological problems in granting a discharge

under *Brunner*); *Oswalt v. Univ. at Buffalo*, 215 B.R. 337, 340-41 (Bankr. W.D.N.Y. 1997) (taking account of debtor's preexisting anxiety disorder in granting discharge of student loans under *Brunner* analysis); *cf. Nys*, 308 B.R. at 446 ("The additional circumstances test does not focus on a debtor's past choices, but on currently existing circumstances and what those circumstances show with regard to the debtor's future financial situation.") (internal quotation omitted).

The cases ECMC cites in support of its argument are distinguishable from the case at bar, because the debtors in those cases failed to prove that their preexisting conditions impaired their ability to work or to pay off their student loans. For example, the debtor in *Goulet* failed to prove how his preexisting alcoholism and felony conviction prevented him from attaining full-time work. *See Goulet*, 284 F.3d at 779 ("Additionally, while Goulet's testimony demonstrates that he has substance abuse issues, we note that the record is devoid of any evidence demonstrating that his problems are insurmountable, or that they impair his ability to work."). Similarly, the Third Circuit in *Brightful* concluded that the bankruptcy court's factual findings regarding the debtor's lack of useful vocational skills and prospects at her current employer were clearly erroneous, noting that the bankruptcy court also failed to discuss how the debtor's long-standing emotional and psychiatric problems impaired her ability to work. *See Brightful*, 267 F.3d at 329-30 ("What is missing from the Bankruptcy Court's analysis, however, is any discussion of the nature of Brightful's emotional and psychiatric problems, or how these problems prevent her from being gainfully employed."). Neither *Gerhardt*, 348 F.3d 89, nor *Roach v. United Student Aid Fund (In re Roach)*, 288 B.R. 437 (Bankr. E.D. La. 2003), both of which ECMC cites, involved disabled debtors or debtors whose permanent prospects for gainful employment were impaired.

ECMC's reliance on *Thoms*, 257 B.R. 144, is likewise misplaced. There, the debtor earned

$48,000 per year, *see id.* at 147, and the court determined that she had substantial excess funds which could be applied to monthly student loan payments, *id* at 149.  It is true, as ECMC notes, that the court in *Thoms* said that in assessing additional circumstances, a court can only recognize "a circumstance that impacted on the debtor's future earning potential but which was either not present when the debtor applied for the loans or has since been exacerbated." *See id.*  But that statement is merely *dicta*, given the facts of that case.  Moreover, the court did not cite any statutory or case authority in support of that statement. *See id.*[6]  Therefore, the split of authority that ECMC would like the Court to acknowledge, based on the broad language that some cases employ, is more illusory than real.  In fact, no case has specifically held that a bankruptcy court is prohibited from looking at preexisting conditions in its consideration of *Brunner*'s second prong, and this Court declines ECMC's invitation to so hold.

Accordingly, the Bankruptcy Court properly considered the totality of circumstances – including, among many other factors, Ms. Curiston's age and her mental and physical conditions – in assessing *Brunner*'s additional circumstances requirement. The following factors appear most relevant in considering that requirement: (1) Ms. Curiston's age and the limited number of working years remaining in which to repay her loans, *see Curiston*, 2004 Bankr. LEXIS 2322, at *12; (2) her lack of more lucrative job skills than those she is using, *see id.* at *11; (3) her psychological and physical disabilities, which prevent full-time employment, *see id.* at *13; and (4) the likelihood that

_____

[6] ECMC's argument that "*Thoms* . . . reflects the legal standard in the Second Circuit, a jurisdiction that historically relies upon its own judicial precedent" is similarly unpersuasive.  *See* Suppl. Br. [doc. # 19] at 3.  In *Porrazzo*, for example, the Bankruptcy Court for the District of Connecticut specifically rejected ECMC's reliance on *Thoms* in a case that also dealt with a debtor whose preexisting medical condition prevented him from obtaining more lucrative employment. *See Porrazzo*, 307 B.R. at 352.  The Court has also cited above numerous cases from bankruptcy courts in this Circuit that have considered preexisting conditions in granting a discharge.

her expense-to-income ratio will continue to increase, *see id.* at *7, *10, *12 (noting that Ms. Curiston has made no provision for retirement, that the $450 her mother contributes monthly will cease when her mother moves to a nursing home, that the debtor will need to repair and eventually replace her car, and that her income is likely to decrease). All of those factors support the Bankruptcy Court's conclusion that Ms. Curiston satisfied the second element of the *Brunner* standard.[7]

ECMC argues that the Bankruptcy Court erred because it found that Ms. Curiston's health had improved. Therefore, ECMC argues, Ms. Curiston could not demonstrate that her poor health would continue to affect her earnings potential for a substantial portion of the repayment period. ECMC confuses the requirements of *Brunner*'s second prong. Ms. Curiston need not prove that any particular factor fueling the finding of additional circumstances will persist for a substantial portion of the payment period. Rather, she must prove "that additional circumstances exist indicating that [her inability to maintain a minimal standard of living for herself if forced to repay the loans] is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. Therefore, whether Ms. Curiston's health had "somewhat improved," as the Bankruptcy Court noted, is not dispositive of whether Ms. Curiston has demonstrated the existence of "additional

---

[7] Unlike the debtor in *Thoms*, Ms. Curiston has not "improved her financial picture with each new employment opportunity and . . . acknowledged the likelihood that even if she remains in her current position, there is potential for financial advancement." *Thoms*, 257 B.R. at 149-50. Furthermore, unlike Ms. Thoms, Ms. Curiston's "ability to repay the loans will [not] likely improve and permit for larger payments over an extended period of time." *Id.* (finding that after these improvements, Ms. Thoms would have had an additional $775 in her monthly budget with which to pay her loans). Ms. Curiston interviewed unsuccessfully for part-time positions for three years until she was finally offered a position with AFS. Under those circumstances, it would be difficult for the Court to conclude that Ms. Curiston "has not entirely maximized her income," *see id.* at 150, at a job paying her an hourly rate between $17 and $19. Indeed, the Bankruptcy Court expressly found as a fact that Ms. Curiston's income prospects would only diminish in the future.

13

circumstances" under *Brunner*.

Finally, ECMC argues that Ms. Curiston should supplement her earnings using her secretarial skills. That argument is also unconvincing. Ms Curiston's secretarial training did not bring her much success in the past. The Bankruptcy Court found that between 1978 and 1992, Ms. Curiston had held and was fired from several secretarial positions, none of which lasted longer than thirteen months. *Curiston*, 2004 Bankr. LEXIS 2322, at *5. The Bankruptcy Court also found – *and ECMC does not contest such finding* – that Ms. Curiston's income is likely to decrease in the future. While ECMC in its brief individually attacks the sufficiency of Ms. Curiston's age, disability, and job skills and history, *see* Appellate Brief of ECMC [doc. # 7] at 21-27, it is the unique combination of these factors that drove the Bankruptcy Court's ultimate decision regarding the "additional factors" analysis. These findings, which ECMC has not contested on appeal, are "strongly suggestive of continuing inability to repay over an extended period of time." *Brunner*, 831 F.2d at 396. Therefore, the Court concludes that Ms. Curiston has satisfied her burden of proof under the second prong of *Brunner*.

## B.

ECMC also argues that in the Bankruptcy Court's analysis of the third *Brunner* factor – good faith – the court gave insufficient weight to Ms. Curiston's failure to apply for the William D. Ford Foundation's Income Contingent Repayment Program ("ICRP"). The ICRP is administered by the U.S. Department of Education to assist low-income debtors who are saddled with large student loan debt. The Bankruptcy Court found that participation in the ICRP would stretch out Ms. Curiston's payment commitment for twenty-five years and would require a payment of at least $175 per month

(based on her then-current income),[8] in addition to the shortfall of roughly $2,000 that she experiences each month. *See Curiston*, 2004 Bankr. LEXIS 2322, at *3-4. ECMC contends that Ms. Curiston's unwillingness to pursue less drastic means of handling her debt, such as participation in the ICRP, precludes this Court from finding that she acted in good faith.

To the extent that ECMC argues that Ms. Curiston's failure to apply for the ICRP precludes a finding of good faith, such a *per se* argument has already been rebuffed several times by different courts. *See, e.g.*, *Rutherford v. William D. Ford Direct Loan Program (In re Rutherford)*, 317 B.R. 865, 880-81 (Bankr. N.D. Ala. 2004) (collecting cases). While applications to other, less drastic, avenues of debt management are certainly indicia of good faith – or lack thereof – the failure to apply for the ICRP in and of itself does not bar a finding of good faith, especially where, as here, the bankruptcy court has held that the debtor cannot pay even a reduced amount. *See, e.g.*, *Frushour*, 433 F.3d at 402-03 ("Although not always dispositive, [an effort to seek out consolidation] illustrates that the debtor takes her loan obligations seriously . . . . [The Debtor's] only reasons for refusing that option . . . were that it was not suited for her and she wanted a fresh start."); *Porrazzo*, 307 B.R. at 351 ("Obviously, the mere existence of the [ICRP] does not mandate the conclusion that a debtor who does not apply for its benefits has failed to satisfy the good faith test . . . ."). ECMC's argument fares no better on this appeal.

Here, the Bankruptcy Court found that Ms. Curiston did not apply to the ICRP program because she cannot afford the minimum payment under that program. *See id.* at *14-*15. In the

---

[8]   The Bankruptcy Court based this factual finding on ECMC's representations. *See Curiston*, at *3-4. Because ECMC has represented to this Court that it does not challenge the Bankruptcy Court's findings of fact, this Court adopts the Bankrupcty Court's factual finding in this regard, despite ECMC's appellate briefing, which appears to attack the $175 per month as the maximum, not minimum, payment. *See, e.g.*, Appellate Br. of ECMC [doc. # 7] at 36.

words of the Bankruptcy Court, Ms. Curiston's participation in the ICRP "would appear futile in light of the debtor's particular circumstances." *Id.* at *14. Furthermore, Ms. Curiston may also be facing a large, non-dischargeable tax liability at the end of the payment period, *see id.* at *15, at a time when her annual earnings are likely to have decreased even further. Finally, the Bankruptcy Court found that Ms. Curiston had sought less drastic means of managing her debts held by ECMC in the past. The Bankruptcy Court specifically found that she had requested and received several deferments of the loans currently held by ECMC. *See id.* at *14.

Other facts also support the Bankruptcy Court's finding of good faith. Good faith is "measured by [a debtor's] efforts to obtain employment, maximize income and minimize expenses, and to undertake all other reasonable efforts to insure repayment." *Elmore v. Mass. Higher Educ. Assistance Corp.*, 230 B.R. 22, 27 (Bankr. D.Conn. 1999) (internal quotation and citation omitted). Ms. Curiston actively sought employment after she graduated in 1999, and has remained employed – albeit part-time – instead of subsisting on social security benefits. ECMC argues that Ms. Curiston precipitously chose not to work full-time after graduation, despite having attained her bachelor's and master's degrees in full-time programs. But ECMC's argument on this point flies in the face of the undisputed facts. Ms. Curiston was able to attain those degrees only because, as she testified, "she received a great deal of assistance from her then-retired husband who, in addition to doing 'all the cooking, all the cleaning, [and] all the shopping,' accompanied her to school and assisted her with her wheelchair." *Curiston*, 2004 Bankr. LEXIS 2322, at *6. But Ms. Curiston is now a widow, and therefore, the essential assistance provided by her late husband is no longer available to her. In any event, the Bankruptcy Court found as a fact that Ms. Curiston is not able to work full time. *Id.* at *13.

16

Finally, the evidence showed that Ms. Curiston has scaled back her monthly expenses, expenses that the Bankruptcy Court found were reasonable.  *See id.* at *8-9.  ECMC has not contested that finding of fact on appeal.  For all these reasons, the Court concludes that Ms. Curiston has carried her burden of proving good faith under the third *Brunner* prong.

**IV.**

Accordingly, the judgment of the Bankruptcy Court is hereby AFFIRMED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: **September 28, 2006.**